IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| LESTER GENE GOBER, | } | |
| TDCJ-CID NO.1303570, | } | |
| Plaintiff, | } | |
| v. | } | CIVIL ACTION NO. G-07-0044 |
| | } | |
| JOHN OLIVAREZ, *et al.*, | } | |
| Defendants. | } | |

OPINION ON DISMISSAL

Plaintiff Lester Gene Gober, a state inmate proceeding *pro se* and *in forma pauperis*, has filed a complaint pursuant to 42 U.S.C. § 1983 and a more definite statement, in which he alleges that one defendant forced him to work in excess of his medical restrictions and retaliated against him for filing grievances and other defendants denied him medical care. (Docket Entry No.1). Defendants have filed a motion for summary judgment. (Docket Entry No.43). Plaintiff has not filed a response to the motion.

For the reasons to follow, the Court will grant defendants' motion for summary judgment and dismiss the complaint with prejudice.

I. BACKGROUND

Plaintiff, who is toothless and has limited use of his hand, claims the following events gave rise to the pending complaint: Plaintiff had been assigned to the Utility 2 Squad at the Ramsey Unit of TDCJ-CID for approximately one year because of his age and medical restrictions. (Docket Entry No.1, page 8). On August 21, 2006, Correctional Officer John Olivarez changed plaintiff's job assignment to the garden squad, which required plaintiff to work faster, because plaintiff refused to address Olivarez as "sir." (Docket Entries No.1, pages 4, 8; No.20, page 1). On August 25, 2006, plaintiff grieved the change in job assignment and

1

complained about Olivarez's actions. (Docket Entry No.20, page 1). On September 9, 2006, Olivarez approached plaintiff as plaintiff was taking his usual medical restriction break. (*Id.*). Olivarez ordered plaintiff to resume work; plaintiff told Olivarez that he would return to work when his break was over and when other inmates, who were also on break, returned to work. (*Id.*, pages 1-2). Olivarez cuffed plaintiff and told plaintiff that he had seen the grievance that plaintiff had filed. (*Id.*, page 3). Olivarez then ordered Officer Reynolds to write a disciplinary case on plaintiff for refusing to complete his job weeding the area around the bell pepper plants without a legitimate reason. (*Id.*).

Plaintiff's medical condition worsened and in August 2006, he was given a new temporary restriction, *i.e.*, no repetitive use of hands. (*Id.*). Olivarez was aware of the new restriction, but from October 20, 2005 to December, 2007 he forced plaintiff to perform work that violated the new restriction. Eventually, plaintiff's repetitive hand restriction was made permanent and he was assigned to work in the factory in mid-January, 2008. (*Id.*).

Plaintiff also complains that Drs. Owen Murray and Mohammad Jahadi denied him adequate medical treatment for his hand in 2005-06. (Docket Entries No.1, No.20, pages 2-3, 7, 9, 10). Plaintiff claims that Dr. Dumas referred him to a hand specialist in October 2005, but sometime between the referral date and November 14, 2005, Murray and Jahadi refused the referral. (Docket Entry No.20, pages 2-3). Plaintiff indicates that after he filed the present suit, he saw a specialist, who determined that his hand had sustained further damage. On February 16, 2007, plaintiff saw yet another specialist who ordered additional tests. (*Id.*, page 2).

Plaintiff further complains that he was denied dentures from Dentist Joseph Mitchell on September 13, 2005, and from Dentist Kevin Luong on September 22, 2006, and on April 8, 2008. (*Id.*, page 3). Plaintiff complains that Medical Facility Practice Manager Sandra

2

Donaho further denied him treatment for his hand and dentures in 2005, and that she failed to ensure minimal delay in delivery of service and access to medical services on November 14 and 20, 2005. (*Id.*, page 4). Finally, plaintiff complains that TDCJ administrators Kenneth Negbenebor, David Turrubiarte, Guy Smith, Karen Brown, Mary Carroll, Ms. Strickland, T. Roddy, and, Donna Vallie failed to provide him with adequate medical and dental care because they denied his grievances. (*Id.*, pages 4-8).

Plaintiff seeks compensatory and exemplary damages and an order directing medical personnel to provide him with treatment for his hand and teeth. (Docket Entry No.1).

Defendants move for summary judgment on grounds that plaintiff failed to exhaust his administrative remedies, and that he cannot show that defendants were deliberately indifferent to his medical needs or that they retaliated against them. (Docket Entry No.43). Defendants assert Eleventh Amendment immunity and qualified immunity. (*Id*.).

## II. STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground

supported by the record, even if the ground is not raised by the movant.  *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## III. DISCUSSION

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law.  42 U.S.C. § 1983; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984).  Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).  A section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).  Thus for plaintiff to recover, he must show that the defendants deprived him a right guaranteed by the Constitution or the laws of the United States.  *See Daniels v. Williams*, 474 U.S. 327, 329-31 (1986).  Plaintiff must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference–not the result of mere negligence.  *See Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994).  The negligent deprivation of life, liberty, or property is not a constitutional violation.  *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995).  Moreover, to hold a defendant liable under section 1983, plaintiff must adduce facts demonstrating the defendant's participation in the alleged wrong.  *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992).

A. Unexhausted Claims

Section 1997(e) of 42 United States Code, as amended by the Prison Litigation Reform Act, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e); *Booth v. Churner*, 532 U.S. 731 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is mandatory. *Booth*, 532 U.S. at 739. Consistent with Supreme Court precedent, the Fifth Circuit has also mandated that a prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

TDCJ-CID currently provides for a two-step grievance procedure for presenting administrative grievances. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999). A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired. *Id.*

Defendants contend, and the summary judgment record shows, that plaintiff did not exhaust his administrative remedies with respect to several claims against defendants Mitchell, Olivarez, and Donaho. Plaintiff did not file a Step 2 Grievance that Dentist Joseph Mitchell refused to give him dentures in September, 2005. (Docket Entry No.43-5, pages 12-13). He also failed to file a Step 2 Grievance that Correctional Officer John Olivarez retaliated against him on September 9, 2006. (Docket Entry No.43-7, pages 12-13). He did not file a

grievance complaining that Olivarez forced him to work beyond his restrictions from October 20, 2005, to December, 2007.  In fact, plaintiff exhausted only one claim regarding Olivarez's alleged retaliatory acts, *i.e.*, the August 21, 2006, change in job assignment for refusing to address Olivarez as "sir."  (Docket Entries No.43-6, pages 14-20; No.43-7, page 1).

Furthermore, plaintiff did not grieve his claims that Medical Facility Practice Manager Sandra Donaho denied him medical treatment for his hand and teeth in 2005 or failed to ensure minimal delay in delivery of service or access to medical facilities in November, 2006.  Defendants' summary judgment records show that plaintiff grieved that he was denied medical treatment on October 26, 2005, and that after he was referred to a specialist, "the people in Galveston" denied the physician's request and his constitutional rights.  (Docket Entry No.43-5, page 20).  Plaintiff noted that he had attempted to resolve the issue with Donaho but she told him that he had been denied treatment.  (*Id.*).  In his Step 2 Grievance, plaintiff complained that he followed the correct procedures to obtain treatment, and attempted to informally address his medical complaints with Donaho before he filed his Step 1 Grievance.  (*Id.*, page 18).  He did not complain that she denied him treatment or failed in her duty to him.  (*Id.*).

Plaintiff presents nothing to contravene defendants' summary judgment proof.  Accordingly, the Court concludes from this record that plaintiff has failed to exhaust his administrative remedies with respect to all of his claims against defendants Mitchell and Donaho and two of his claims against defendant Olivarez.  Therefore, defendants Mitchell, Donaho, and Olivarez are entitled to summary judgment on these claims.

### B. Claims for Monetary Damages

#### 1. Official Capacity

Defendants move for summary judgment on plaintiff's claims against them in their official capacity on grounds that they are immune from such relief under the Eleventh Amendment. (Docket Entry No.43). The Eleventh Amendment bars a suit in federal court by a citizen of a state against his own state or against a state agency or department. *Hughes v. Savell*, 902 F.2d 376, 377-78 (5th Cir. 1990). Eleventh Amendment immunity has a jurisdictional effect; it deprives a federal court of jurisdiction to hear a suit against a state. *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 342 (5th Cir. 1996). This immunity extends to suits for monetary damages against state officials in their official capacity. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 609 n. 10 (2001) (holding "[o]nly States and state officers acting in their official capacity are immune from suits for damages in federal court").

Because plaintiff's claims for monetary damages against defendants in their official capacity as employees of the State of Texas are barred by the Eleventh Amendment*; see Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (suit not against official but state office); *Oliver v. Scott*, 276 F.3d 736, 742, 742 n. 5 (5th Cir. 2002); the Court lacks jurisdiction to consider such claims. Accordingly, plaintiff's claims for monetary damages against defendants in their official capacity are subject to dismissal.

#### 2. Individual Capacity

Defendants contend they are entitled to qualified immunity from plaintiff's claims for monetary damages against them in their individual capacity. (Docket Entry No.43).

Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law." *Fraire v. City of Arlington*, 957 F.2d 1268, 1272 (5th Cir. 1992).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations establish a constitutional violation, the court next considers whether the defendants' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope*, 536 U.S. at 739 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *but see Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009) (holding that consideration of the issues in this sequence is no longer mandatory).

When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002). Even so, on summary judgment, the court must look to the evidence before it in the light most favorable to the plaintiff when conducting a qualified immunity inquiry. *Id.* at 323.

a. Deliberate Indifference

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk. *Id.* at 834. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. *Id.* at 837, 839; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id.* Mere negligence does not constitute a section 1983 cause of action. *Estelle*, 429 U.S. at 106; *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000) ("the subjective intent to cause harm cannot be inferred from a ... failure to act reasonably").

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. Delay in obtaining medical treatment does not constitute deliberate indifference unless it is shown that the delay resulted in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

### 1. Referral to a Specialist

Plaintiff contends that Dr. Dumas referred him to a specialist for his hand[1] sometime between October 26, 2005, and November 14, 2005, but Drs. Murray and Jahadi denied the referral after reviewing plaintiff's medical records. (Docket Entry No.20). Based on this denial, plaintiff complains that Murray and Jahadi violated the prohibition against cruel and unusual punishment in the Eighth Amendment. (Docket Entries No. 1, No.20).

Dr. Murray attests by affidavit that plaintiff was examined on October 8, 2005, by a physician's assistant, who prescribed an anti-inflammatory medication for a possible ulnar nerve injury. (Docket Entry No.43-2, page 3). Murray attests that plaintiff was evaluated on October 26, 2005, by Dr. Natascha Dumas after he submitted a sick call request complaining that the medication was not relieving the symptoms. (*Id.*). Following an examination of plaintiff's hand, Dumas ordered a nerve conduction study and additional medication. (*Id.*). Murray attests that Dumas's "request was reviewed through UTMB-CMC utilization review and a recommendation was made to continue non steroid anti-inflammatory medications and splinting." (*Id.*, pages 3-4). Murray further attests that "[u]ltimately, the patient was evaluated through both the Neurology and Orthopedic Departments of UTMB where conservative therapy of non-steroid anti-inflammatory medications and a splint were recommended." (*Id.*). Murray avers that he did not deny plaintiff medical treatment and he has no knowledge that Dr. Jahadi did either. (*Id.*). Plaintiff was informed in the response to his Step 1 Grievance that "Utilization Review will determine whether or not your referral is approved (if a referral is made by the

---

[1] Plaintiff's medical records dated September 11 and 15, 2006, reflect a diagnosis of right hand atrophy and anaesthesias and severe ulnar neuropathy; they also reflect that plaintiff has been referred to an ortho-hand specialist. (Docket Entry No.43-9, pages 3, 5-6)

health care provider)." (Docket Entry No.43-5, page 19). Plaintiff presents nothing to contravene this record.

Because the record shows nothing more than a disagreement among medical personnel and plaintiff regarding the treatment of his hand, plaintiff fails to show that defendants Murray and Jahadi were deliberately indifferent to his medical needs. Accordingly, he fails to show that Murray and Jahadi violated the Eighth Amendment and therefore, are not entitled to qualified immunity on this claim.

### 2. Denial of Dentures

Plaintiff complains that Dentists Luong and Mitchell failed to provide him with dentures. (Docket Entries No.1, No.20). As previously noted, plaintiff did not exhaust his claim against defendant Mitchell. Plaintiff, however, grieved that defendant Luong refused him dentures after an examination on September 22, 2006.[2] (Docket Entry No.43-5, page 5). The grievances were denied with notations that plaintiff did not meet the criteria that dentures were medically necessary. (*Id.*, pages 4-6).

UTMB-CMC's policy regarding dental prosthodontic services, effective 2003, provides for dentures only when medically necessary as determined by the inmate's weight, body mass, and nutritional status. (Docket Entry No.43-3, pages 2-3, 5-6). DDS Billy Horton, the Southern Division Dental Director for UTMB-CMC, attests by affidavit that defendant Mitchell

---

[2] Plaintiff claimed that he had lost eighteen pounds in two years and that he suffered physically and mentally from the lack of teeth. (Docket Entry No.43-5, page 5). Plaintiff was informed that Luong had explained to plaintiff that UTMB policy did not permit fabrication of dentures unless they were medically necessary and that plaintiff's dentist at the previous unit had found no medical necessity. Luong also explained that plaintiff's body mass index was stable and within a healthy range; he offered plaintiff a blended diet. (*Id.*, page 6). Plaintiff refused and left angry. (*Id.*).

In his Step 2 Grievance, plaintiff complained that his gums were shrinking and he should not be denied dentures on monetary grounds and not medical reasons. The grievance was denied; the grievance investigator noted that plaintiff had not attempted to resolve the dispute informally as required. (*Id.*, page 4).

examined plaintiff on September 14, 2005, and noted that plaintiff "showed no signs of health problems from not having dentures and his weight had been stable since entering TDCJ three months earlier." (Docket Entry No.43-3, page 3). Horton avers that Mitchell consulted a physician to rule out a medical necessity for dentures. (*Id*.). Horton further avers that defendant Luong evaluated plaintiff for dentures on September 25, 2006, and found no medical necessity.[3] (*Id.*). Plaintiff was again evaluated on April 8, 2008, and June 3, 2008, and no medical necessity was noted. (*Id*.). Horton attests that "[t]here is no evidence of a medical necessity for dentures to be provided from the records I have reviewed. Lester Gober has been receiving appropriate dental care consistent with the dental policies of UTMB Correctional Managed Care." (*Id.*, page 3). Plaintiff presents nothing to show that dentures are medically necessary within UTMB guidelines and that Mitchell or Luong were deliberately indifferent to his serious medical needs by declining to authorize dentures per UTMB-CDC policy.

Accordingly, plaintiff fails to show that defendants Mitchell and Long are not entitled to qualified immunity on this claim.

### 3. Job Assignment

The Eighth Amendment's prohibition against cruel and unusual punishment requires that prisoners be afforded "humane conditions of confinement" and that prison officials ensure that inmates receive adequate food, shelter, clothing, and medical care. *Farmer*, 511 U.S. at 832-33; *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). A prison official acts with deliberate indifference if he knows of and disregards an excessive risk to inmate health or safety. *Id*, 511 U.S. at 837. "[W]hen prison officials knowingly force[] a prisoner to engage in work

---

[3] Plaintiff's medical records support Horton's attestation that DDS Luong found no medical necessity for dentures on September 25, 2006. (Docket Entry No.43-9, page 4).

'which they kn[o]w would significantly aggravate his serious physical ailment[,] such a decision would constitute deliberate indifference to serious medical needs' in violation of the Eighth Amendment." *Richardson v. Spurlock*, 260 F.3d 495, 499 (5th Cir. 2001) (quoting *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989)).

Plaintiff alleges that defendant Olivarez forced him to engage in work from October 20, 2005 to December 2007, which conflicted with a restriction of no repetitive use of hands. (Docket Entry No.20, pages 2, 13). Plaintiff claims that Olivarez was given daily a sheet with new and on-going restrictions for the whole field force; therefore, he was aware of plaintiff's restriction. (*Id*.). Plaintiff alleges that Olivarez "moved him to another field force squad, which only aggravated the Plaintiff's condition and making [sic] his hand worse." (Docket Entry No.20, page 13). Plaintiff maintains that as a result of Olivarez's actions, he was given a permanent restriction of no repetitive use of hands. (*Id.*). Plaintiff claims that Olivarez should have referred plaintiff for a job change due to the restrictions but he refused to do so. (*Id.*, page 15). Plaintiff was assigned to factory work in January, 2008. (*Id.*, page 16).

The summary judgment record shows that on June 16, 2005, plaintiff's only job restrictions were no walking more than 500 yards and no lifting over forty pounds. (Docket Entry No.43-7, page 7). On October 20, 2005, plaintiff was assigned to the Utility Squad 2. (*Id*., page 6). On August 22, 2006, he was assigned to the Garden Squad 2. (*Id*.). A few days later, on August 25, 2006, plaintiff filed Step 1 Grievance Number 2006226491, wherein he stated that he had been assigned to the Garden Squad in the fields and that he wanted to return to Utility Squad 2. (Docket Entry No.43-6, pages 14-15). On September 11, 2006, PA Duldowney added a temporary restriction of no repetitive use of hands after examining plaintiff's hand. (Docket Entries No.43-7, page 7; No.43-9, page 3). On the same day, plaintiff was reassigned to the

Utility Squad 2 because of the new restriction. (Docket Entry No.43-7, pages 1, 5-6). Neither plaintiff's pleadings nor the summary judgment record show the type or nature of work that plaintiff performed on the Utility Squad 2, which he claims conflicted with his hand restriction. Without stating facts to support this allegation, plaintiff fails to show that Olivarez was deliberately indifferent to plaintiff's serious medical needs. Accordingly, plaintiff fails to defeat Olivarez's defense of qualified immunity.

b. Retaliation

Plaintiff alleges that Olivarez engaged in three acts of retaliation. First, plaintiff contends that on August 21, 2006, Olivarez changed his job assignment from the outdoor Utility Squad 2 to the Garden Squad because plaintiff did not address him as "sir." (Docket Entries No.1, page 4; No.20, page 1). On August 25, 2006, plaintiff grieved the change in job assignment. (Docket Entry No.20, page 1). Plaintiff claims on September 9, 2006, Olivarez ordered him back to work while plaintiff was taking a medical break; when plaintiff refused the order, Olivarez cuffed him and told plaintiff that he had seen the grievance. (*Id.*). Plaintiff claims that Olivarez ordered plaintiff to be removed from the fields and told Officer Reynolds to write a disciplinary case on plaintiff for failure to complete a job without a legitimate reason. (Docket Entries No.1, page 8; No.20, page 2). Finally, plaintiff alleges that after plaintiff was reassigned to the Utility Squad 2, Olivarez retaliated against him by forcing him to perform work in violation of his medical restrictions. (Docket Entry No.20, page 2).

As previously discussed, plaintiff did not exhaust two of his retaliation claims against Olivarez. He only exhausted the claim regarding the August 21, 2006, change in job assignment for refusing to address Olivarez as "sir." (Docket Entries No.43-6, pages 14-20; No.43-7, page 1). Therefore, the Court need only address the August 21, 2006, retaliation claim.

Claims of retaliation generally flow from protections provided by the First Amendment. A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir. 1998), or for complaining through proper channels about a guard's misconduct. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (citing *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995)). Claims of retaliation from prison inmates, however, are regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions. *Woods,* 60 F.3d at 1166. To prevail on a claim of retaliation a prisoner must establish the following elements: (1) the violation of a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris*, 449 F.3d at 684; *Jones v. Greninger,* 188 F.3d 322, 324-25 (5th Cir. 1999). If an inmate is unable to point to a specific constitutional right that has been violated, then the claim will fail as a matter of law. *Tighe v. Wall,* 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a constitutional right); *Woods,* 60 F.3d at 1166 (observing that, "[t]o state a claim, the inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than his personal belief that he is the victim of retaliation. *Jones,* 188 F.3d at 325; *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997).

Plaintiff's pleadings do not show that Olivarez retaliated against plaintiff for exercising a constitutional right but for refusing to address Olivarez as ordered. Therefore, his retaliation claim fails as a matter of law. Accordingly, defendant Olivarez is entitled to qualified immunity on this claim.

c. <u>Grievances</u>

Plaintiff complains that defendants Negbenebor, Turrubiarte, Smith, Brown, Carroll, Strickland, Vallie, and Roddy denied his grievances or failed to take the action plaintiff requested they take in the letters that he submitted to them. (Docket Entries No.1, No.20, pages 4-8). Plaintiff's complaints about these defendants fail for two reasons. First, an inmate does not have a constitutionally protected liberty interest in having grievances or complaints resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). Second, plaintiff's pleadings do not show that these defendants were personally involved in any of the alleged constitutional violations or that they instituted or implemented a policy that would deprive plaintiff of his constitutional rights. Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381 (5th Cir. 1983). Liability based on one's supervisory capacity exists if the supervisor is personally involved in the constitutional deprivation or a sufficient causal connection exits between the supervisor's wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

Accordingly, plaintiff fails to show that these defendants violated his constitutional right and therefore, fails to overcome their qualified immunity defense.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Defendants' motion to seal the last known address of Dr. Mohammad Jahadi (Docket Entry No.27) is GRANTED.

2. Defendants' motion for summary judgment (Docket Entry No.43) is GRANTED. All claims against all defendants are DENIED.

3. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

4. All other pending motions, if any, are DENIED as moot.

The Clerk shall provide a copy of this Order to the parties.

SIGNED at Houston, Texas, this 23rd day of July, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE